UNITED STATES of America,
Plaintiff–Appellant,

v.

Robert H. CLEMMER,
Defendant–Appellee.

No. 89–3787.

United States Court of Appeals,
Sixth Circuit.

Argued June 7, 1990.

Decided Oct. 23, 1990.

Robyn Jones (argued), Office of U.S. Atty., Columbus, Ohio, for plaintiff-appellant.

David C. Greer (argued), Michael W. Krumholtz, Bieser, Greer & Landis, Dayton, Ohio, for defendant-appellee.

Before MERRITT, Chief Judge and KRUPANSKY and MILBURN, Circuit Judges.

MERRITT, Chief Judge.

The United States appeals the District Court's entry of a judgment of acquittal after a jury conviction pursuant to 18 U.S.C. § 3731 (1988).[1] The District Court held that the jury could have convicted the defendant on the basis of a factually incorrect statement introduced in the jury instructions. Because we find that the conviction is sound, we reverse and instruct the District Court to enter the conviction.

## I.

Defendant Robert Clemmer served as a police officer in Dayton, Ohio. The government suspected defendant of accepting bribes and pursued an investigation. After the investigation, a grand jury returned a six count indictment against defendant and his alleged co-conspirator, Charles Gentry.[2] Four of the counts related to the alleged bribery, and the other two alleged that each defendant filed a false tax return for 1983 in violation of I.R.C. § 7206(1). Count 5 pertained to Clemmer, Count 6 to Gentry. The grand jury worded the indictment broadly.[3] At trial, the government used a net worth theory to prove its case against Clemmer under Count 5. It attempted to

---

**1.** Prior to oral argument, this Court raised *sua sponte* the issue of its own jurisdiction over appeals by the government of acquittals. After reviewing the briefs submitted by the parties, we are satisfied that we have jurisdiction. *See United States v. Martin Linen Supply,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *United States v. Jones,* 580 F.2d 219, 221 n. 3 (6th Cir.1978).

**2.** The District Court upheld Gentry's conviction, as explained below. Gentry appealed to this Court. Because the panel unanimously agreed that no jurisprudential purpose would be served by issuing a written opinion, it affirmed the judgment orally in open court pursuant to Local Rule 19. *United States v. Gentry,* 905 F.2d 1539 (6th Cir.1990).

**3.** Count 5 of the indictment read as follows:

> On or about September 11, 1984 in the Southern District of Ohio, ROBERT H. CLEMMER, JR. a resident of Dayton, Ohio, did wilfully and knowingly make and subscribe a 1983 U.S. Individual Income Tax Return (Form 1040), which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said 1983 U.S. Individual Tax Return (Form 1040) he did not believe to be true and correct as to every material matter in that the said return reported on line 22 his total income was $43,159.00 whereas, as he then and there well knew and believed, he received substantial income in addition to that heretofore stated.

J.A. at 26. The charge of Gentry read similarly.

show that defendant's net worth at the end of the tax year, taking into account certain documented expenditures and nonreportable income (like loans and gifts), could not be accounted for on the basis of defendant's reported income. While it theorized that the alleged bribes constituted the unreported income, its theory only required it to show the disparity between the defendant's reported income and his true income as derived from his net worth.

During the charge conference, one of the government's attorneys erroneously informed the trial judge that the government's position was that defendant Clemmer had not reported interest income received from Wilton Auto Sales. J.A. at 721–22. The government theorized that both defendants had invested their bribes in this business, and had received interest on their investments. Defense counsel had objected to any reference to the Wilton Auto Sales income in the charge. J.A. at 721. Both the government and the defendant now agree that Clemmer had received and reported the interest income; his co-conspirator received similar income but did not report it.

On the unreported income charge, the judge instructed the jury as follows:

In assessing the amount of Defendant's total income, the jury should include any illegally acquired funds along with those lawfully acquired. If the jury finds from the evidence that there was income received, and not reported as the law required, it makes no difference with respect to statements of total income on a tax return, whether such income was lawfully or unlawfully acquired....

Should you find that Hawthorne made to Defendant Clemmer any payment constituting a bribe, such payment is not a gift or loan for tax purposes and the payment must be reported as income on the recipient's tax return. *Furthermore, should you find that Defendant Clemmer received any interest on money loaned to William Littleton of Wilton Auto Sales, such interest is income which must be reported on the recipient's tax return.*

J.A. at 84 (emphasis added). The District Court also instructed the jury about the government's net worth theory. J.A. at 888–90. When the other government attorney heard the charge, she did not step forward to advise the court that the government would concede that Clemmer had reported the Littleton interest income, as it now agrees it should have done.

During its deliberations, the jury sent a question out to the judge: "On Count 5 & 6 do we have to either prove or disprove *both* the bribe and the nonreported interest income in order to decide our verdict?" J.A. at 894. After extensive argument from counsel, the judge decided to answer the question "no," but to remind the jury that the government bears the burden of proof and the jury need not "disprove" anything. J.A. at 902–03. The jury acquitted the two of the bribery charges and convicted them of the tax offenses.

After trial, the District Court entertained motions from counsel asking for judgments of acquittal on the § 7206(1) charges. The District Court granted Clemmer's motion and denied Gentry's motion. The court reasoned:

The fact that Defendant Clemmer was found not guilty on Counts 1 through 4 of the Indictment [the bribery charges] strongly suggests that the jury did not believe beyond a reasonable doubt that Clemmer received bribe monies.... Unfortunately, the only reasonable conclusion to be drawn from this set of circumstances is that the jury convicted Defendant Clemmer on Count 5 for failing to report interest income from Wilton Auto Sales.

J.A. at 35. The only way to have convicted Clemmer of the false return, without having a verdict inconsistent with the acquittal for bribery, the court apparently reasoned, would have to be the interest income. But Clemmer had reported that income, so the jury's verdict was not supported by any evidence. Because Gentry did not report the interest income, the verdict against him would stand.

## II.

■ The District Court probed into the jury's reasoning and attempted to divine why it acquitted defendant of the bribery counts and convicted defendant for the tax offense. It concluded that a conviction for failing to report bribe income would be inconsistent with an acquittal on the underlying bribery charges. However, the Supreme Court has repeatedly held that a jury may announce logically inconsistent verdicts in a criminal case. As Justice Holmes observed, inconsistent verdicts may result from compromise, mercy, or any number of reasons. *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). Separate charges in an indictment should be treated like separate indictments, and since acquittal on a criminal charge would not constitute *res judicata* on any other charge in the indictment, courts should let inconsistent verdicts stand. *Id.* at 393, 52 S.Ct. at 190. In addition, this policy prevents judges from looking into the motivations behind jury verdicts. *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (conviction for compound crime upheld where defendant acquitted of predicate crime). The District Court erred, therefore, when it conjectured that the jury must have not believed the bribery charges and therefore could have relied only on the interest income to convict defendant. The District Court, under the reasoning of *Dunn* and *Powell*, should not have inquired into why the jury voted the way it did or tried to avoid an inconsistent verdict by insisting that the basis for the jury verdict was the interest income.

Furthermore, the District Court's reasoning is incorrect even if it could hypothesize about the jury's reasoning. Because the government relied on a net worth theory to prove its case under § 7206(1), it did not need to prove that the defendant accepted any bribes in order to prove that he filed a false tax return. Naturally, the government believes that the source of the unreported income is the bribes, but their inability to convict defendant of bribery does not conflict with the evidence that defendant's net worth and expenditures exceeded those of a person with his reported income and admitted nonreportable income. The jury may have believed that defendant had extra reportable income that he did not report, but may not have believed beyond a reasonable doubt that this income came from bribes.

## III.

■ The District Court instructed the jury that defendant had to report any interest income he received from Wilton Auto Sales, interest that defendant did report. The defendant contends that a conviction under this instruction would violate *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), but *Stromberg* is not our case. In *Stromberg*, the Supreme Court held a general jury verdict because one of the possible grounds of conviction violated the First Amendment. The Court followed the rule that the jury's verdict must be set aside if it could only be supported on one legally sufficient theory but not on a legally invalid theory and the reviewing court was uncertain which of the two theories was relied on by the jury in reaching the verdict. The prosecution charged Stromberg under a California statute prohibiting various forms of sedition including the display of a red flag. This statute prohibited such display if it symbolized opposition to organized government, if it stimulated anarchistic activity, or if it aided seditious propaganda. The state trial court instructed the jury that if it

should believe beyond a reasonable doubt that the defendants, or either of them, displayed, or caused to be displayed, a red flag, banner, or badge, or any flag, badge, banner, or device of any color or form whatever in any public place or in any meeting place, as charged in count one of the information, and if you further believe from the evidence beyond a reasonable doubt that said flag, badge, banner, or device was displayed, or caused to be displayed, as a sign, symbol, or emblem of opposition to organized government, or was an invitation or stimulus to anarchistic action, or was in aid to propaganda that is of a seditious char-

acter, you will find such defendants guilty as charged in count one of the information.

*Id.* at 363, 51 S.Ct. at 533. The trial court further instructed the jury that it could convict the defendant for any one of the three prohibited acts. *Id.* at 363–64, 51 S.Ct. at 533–34. The jury convicted Stromberg.

The Supreme Court held that one part of the statute violated the First Amendment. Prohibiting "opposition to organized government" could include a prohibition on peaceful opposition, an activity that the Constitution protects. *Id.* at 369–70, 51 S.Ct. at 535–36. Because one of the reasons the jury may have used to convict Stromberg was contrary to the First Amendment, because the general verdict did not explain the jury's reasoning, and because the Court did not want to hypothesize about the jury's reasoning, the Supreme Court ordered Stromberg released. *See also Zant v. Stephens*, 462 U.S. 862, 880–84, 103 S.Ct. 2733, 2744–47, 77 L.Ed.2d 235 (1983) (explaining reasons for *Stromberg* rule).

*Stromberg* does not help defendant here. Although the jury in this case issued a general verdict, the defendant cannot demonstrate that any part of the instruction is invalid. There is no legally insufficient ground as in the *Stromberg* sense. Defendant claims that the jury may have convicted him for accepting the interest income and failing to report it. It could not have, however, if it followed the jury instructions. Judge Rice told the jury that if "Defendant Clemmer received any interest on money loaned to William Littleton of Wilton Auto Sales, such interest is income which must be reported in the recipient's tax return." Judge Rice did not tell the jury that if defendant received the interest, he is guilty of filing a false tax return. Nor did Judge Rice tell the jury that defendant did not report the interest. Rather, the judge simply informed the jury that interest is among those types of income that taxpayers must report.

A useful counterpoint to this case is *United States v. Kneen*, 889 F.2d 770 (8th Cir.1989). In *Kneen*, the defendant was charged with knowingly taking two tax credits, an Investment Tax Credit and a Business Energy Credit, to which he was not entitled. The judge instructed the jury that it could convict Kneen of violating the Internal Revenue Code for taking either credit wrongfully. The government later conceded that substantial evidence would not support a conviction for taking the Investment Tax Credit alone. The Eighth Circuit vacated this part of Kneen's conviction because the jury issued a general verdict and the court could not determine whether the jury convicted Kneen for wrongfully taking the Investment Tax Credit—for which there was inadequate evidentiary support—or the Business Energy Credit, for which there was adequate support. In the case before us, however, the instruction contained no error; rather it only said that if the defendant received the interest income, he had to report it. The jury was not told that he did not report it. Indeed, the government conceded in its closing argument that defendant reported the interest income. We should not assume as does the dissenting opinion that the jury misunderstood or refused to follow a clear instruction not otherwise invalid as in *Stromberg*.

The jury instructions must be read in light of the government's net worth theory. The jury learned that it could convict defendant if his net worth and expenditures could not be supported by his reported income and proved nonreportable income. We should not assume that the jury misunderstood this instruction. Similarly, the question that the jury sent out to the judge reflects this understanding. While it indicates that the jury may have been uncertain of its precise duty when it asked the question, we should not assume that the jury convicted the defendant of not reporting the interest income when the proof was to the contrary. In light of the fact that the jury was considering its verdict as to both defendants, one of whom reported the interest income and the other of whom did not, it seems probable that the jury referred to "interest income" simply

as an example of income not reported that did not come from bribes.

The District Court erred, therefore, when it attempted to recreate what the jury might have thought or believed when it returned a conviction on Count 5. The jury may have believed any number of things, but the instruction itself does not tell the jury that it could convict defendant on the basis of the Wilton Auto Sales income.

### IV.

Accordingly, the order of the District Court vacating the conviction is REVERSED, and the case is REMANDED with instructions to re-enter the conviction and continue with further proceedings, including sentencing, not inconsistent with this opinion.

KRUPANSKY, Circuit Judge, dissenting.

Because the panel majority misconceives the mandate of the Supreme Court's decision in *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), and its application to the instant case, I must respectfully dissent.

Pertinent to the lower court's disposition of the Fed.R.Crim.P. 29(c) motion was an in-chambers conference between the judge and the trial counsel to discuss proposed jury instructions. In attendance were Assistant United States Attorney (AUSA) David Shroyer and defense counsel Michael Krumholtz and Daniel O'Brien, representing Clemmer and Gentry, respectively. AUSA Robyn Jones, who also participated in the prosecution, was not present during the meeting. The dialogue focused, in relevant part, on the substance of instruction 8006 addressing counts 5 and 6 of the indictment, which charged Clemmer and Gentry, respectively, with filing false tax returns for the tax year of 1983 in violation of Internal Revenue Code § 7206(1).

The final form of the instruction given to the jury read as follows:

In assessing the amount of Defendant's total income, *the jury should include any illegally acquired funds along with those lawfully acquired.* If the jury finds from the evidence that there was income received and not reported as the law required, *it makes no difference with respect to statements of total income on a tax return whether such income was lawfully or unlawfully acquired.*

Gifts for which nothing is expected in return and loans received by an individual are not considered to be income which must be reported for tax purposes.

Should you find that Hawthorne made to Defendant Clemmer any payment constituting a bribe, such payment is not a gift or loan for tax purposes, and the payment must be reported as income on the recipient's tax form.

Furthermore, *should you find Defendant Clemmer received any interest on money loaned to William Littleton of Wilton Auto Sales, such interest is income which must be reported on the recipient's tax return.*

Clemmer's counsel objected to the instruction because it was overly broad and implicated unreported monies received from Wilton Auto Sales [1] as interest, thereby exceeding, in his opinion, the scope of count 5 of the indictment—which was limited to unreported bribes received from Hawthorne—and thus compelling the jury to consider and decide the non-issue of whether Clemmer had failed to report the interest he had received from Wilton in 1983, when, in fact, as later admitted by the government in connection with the post-verdict Rule 29(c) motions for acquittal, he had reported that income in his 1983 return.

Clemmer's objection to the proposed charge prompted the following colloquy between the judge, who was seeking clarification in an effort to correctly tailor the instruction, and counsel:

THE COURT: Yes. And what, basically, it says is—it does two things. Ba-

---

1. The Wilton Auto Sales interest is sometimes referred to as interest paid to Clemmer by Wil-liam Littleton, the owner and operator of the automobile dealership.

sically, it says that anything they got from Hawthorne, if they find they got it from Hawthorne, is not a loan or a gift which need not be reported, not a gift which need not be reported. Exquisite, rather than the double negative. It can be cleaned up a little bit. And it also says that, if they got any interest income from Wilton Auto Sales on the money they advanced or put into the used-car buying operation, that that is reportable.

That's the bottom line.

Mr. Krumholtz?

MR. KRUMHOLTZ: Your Honor, while I agree with the Court's indication that the tailoring of the sentence was exquisite, my concern is that, as I view the tax charge, which is what we're really dealing with here in 8006, the essence of the tax charge is that Clemmer and Gentry failed to report the bribe money that was given to them in '83.

As we've been over and over many times, the only tax count in the six-count indictment relates to the time period for 1983, and I've understood the Government's position, as annunciated [sic] in this room and on the record, to be that that's because that was the time period that Mr. Hawthorne says he paid the bribe.

I like the Court's language up to the point where you talk about William Littleton, because I don't think there's been any showing or, indeed, any allegation that interest payments from Littleton were not reported and thus make up the 1983 tax violation.

THE COURT: Let's find out the answer to that.

Mr. Shroyer?

MR. SHROYER: Your Honor, it is our position that would be part of the tax charge. The tax is "a false statement."

THE COURT: I understand that.

MR. SHROYER: And the not reporting the Littleton funds is directly relative to the bribe because of the failure to report it and not disclose it, and that was part of the bribe proceeds in the case, anyway, at least in the return, was income from bribe proceeds that they

didn't report, and it's for the total calendar year of 1983.

\* \* \* \* \* \*

THE COURT: Let me ask you a question. Is it your claim that, putting Hawthorne aside, that they did not fully report what they had gained from Wilton Auto Sales during '83?

MR. SHROYER: I think the evidence shows they didn't report that on their tax return.

THE COURT: All right. So, your theory is that the gravamen of Counts 5 and 6 is, they simply underreported their taxable income and, even if the Jury should believe that William Hawthorne never paid them a dime, they still are guilty of Counts 5 and 6 because of underreporting of the Wilton Auto Sales interest?

\* \* \* \* \* \*

[U]nder the facts of this case, it is your theory that they did not report, that they underreported, their Wilton income? Am I correct?

MR. SHROYER: They did.

AUSA Jones immediately recognized the implications of the erroneous instruction when it was read to the jury, but elected not to advise the judge that Clemmer, unlike Gentry, had reported the Wilton interest in his 1983 tax return because, as the AUSA conceded during arguments addressing the defendants' post verdict Fed.R. Crim.P. 29(c) motions for acquittal, a corrected instruction 8006 would have overemphasized the disparity between the government's proof against each of the defendants, thereby jeopardizing the tax case against Clemmer.

At the conclusion of the arguments addressing the defendants' Rule 29(c) post verdict motions for acquittal, and having been apprised of the government's withheld information conceding that Clemmer had reported his 1983 Wilton interest income, the trial court *granted* Clemmer's motion for acquittal on the I.R.C. § 7206(1) violation charged in count 5 of the indictment and, significantly, *denied* Gentry's motion for acquittal of the identical tax

violation charged against him in count 6 of the indictment.

In reversing the trial court's acquittal of Clemmer's count 5 conviction, the panel majority's erroneous hypothecation that the acquittal had its genesis in an inconsistent verdict returned by the jury fatally contaminates its final disposition. The conclusion is belied by the record and the trial judge's opinion disposing of Clemmer's Rule 29(c) motion when read in context. It is patently clear from the record that, under the facts of this case, the jury's verdict acquitting both defendants of the bribery counts charged in the indictment and convicting them of the income tax violations under I.R.C. § 7206(1), as charged in counts 5 and 6 of the indictment, are not inconsistent.

The panel majority's reasoning, absent its self-indulgent and unsupportable supposition that the trial court's disposition of Clemmer's Rule 29(c) motion for acquittal was anchored in a perception of inconsistent jury verdicts within the orbit of *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), and *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), ignores, *sub silentio*, the salient manifestation of the trial judge's grasp and complete understanding of the issue seeking resolution, which understanding was demonstrated by the court's refusal to grant Gentry's identical Rule 29(c) acquittal motion.[2] The opinion below fails to support the proposition that the trial judge was thinking "inconsistent jury verdicts" when he granted Clemmer's motion for acquittal.

As reflected in his opinion *granting* Clemmer's Rule 29(c) motion, the trial judge considered the verdicts to be consistent within the facts of the case. That the perception of inconsistent verdicts was *not* the trial judge's *ratio decidendi* is further demonstrated by his *denial* of Gentry's identical Rule 29(c) motion for acquittal.

The majority's attempt to divine the reasons underlying the trial court's decision to grant Clemmer's Rule 29(c) post-verdict motion for acquittal poses, at best, an interesting academic question which, under the conceded facts of this case, has no legal impact upon the court's disposition. It is of no legal significance if the trial court granted Clemmer's Rule 29(c) motion as a result of an erroneous impression that the jury's verdicts on counts 1 through 4 of the indictment were inconsistent with its verdict on count 5. Regardless of the district court's rationale, the decision must be upheld if *legally* correct for *any* reason. If the trial court's disposition of the motion for acquittal was correct in law, it must be affirmed even if granted for the wrong reason.

This appeal lends itself to resolution without resort to frivolous and self-indulgent conjecture into the jury's reasons for arriving at its verdict of guilt on the false tax return violation charged in count 5 of the indictment. Because the jury returned a general verdict, no one, including the panel majority, is able, absent sheer speculation, to determine which one of the government's three theories of proof the jury accepted and relied upon to support its verdict of guilt on count 5.

The disposition of Clemmer's Rule 29(c) motion was and is within the four corners of the Supreme Court's opinion in *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), and did not, as suggested by the majority, implicate the *Dunn–Powell* rationale.

A cursory perusal of the record discloses that the convictions of the defendants under counts 5 (Clemmer) and 6 (Gentry)

---

**2.** Logic dictates that the only conceivable support for concluding that the trial court's disposition of both Clemmer's and Gentry's identical motions for acquittal resulted from an erroneous impression that the jury's verdict of acquittal on counts 1 through 4 of the indictment were inconsistent with its verdicts of guilt on counts 5 (Clemmer) and 6 (Gentry) of the indictment would have been in a resolution granting the identical motions of *both* defendants. Gentry's conviction of the I.R.C. § 7206(1) tax violation charged in count 6 was every bit as "inconsistent" with his acquittal under counts 1 through 4 of the indictment as Clemmer's count 5 conviction was inconsistent with his acquittal under counts 1 through 4, yet the trial judge denied Gentry's Rule 29(c) motion.

could have been supported by one or more of several jury findings. The controversial jury instruction here in issue, as it addressed the false tax return violation of I.R.C. § 7206(1) as charged in count 5 of the indictment, presented the jury with the option of convicting Clemmer on one or more of several findings. Specifically, as the case was presented to the jury, it could convict Clemmer of count 5 if it found that he had: (1) accepted and not reported substantial bribes; (2) earned and not reported interest income from Wilton Auto Sales; *or* (3) experienced an unexplained and unreported increase in "net worth" during the tax year of 1983.[3] In light of the government's admission at the post verdict hearing that Clemmer, unlike Gentry, had in fact reported and paid the income taxes on the interest from Wilton Auto Sales, it was obvious to the district judge during the arguments on Clemmer's post verdict Rule 29(c) motion for acquittal that it would have been plain error for the jury to have convicted Clemmer for failing to report that income on his 1983 income tax return.

Since the jury returned a general verdict of guilt against Clemmer on Count 5 of the indictment, it was impossible for the parties or the court to determine which of the several optional findings available to the jury to support its guilty verdict was the anchor for Clemmer's conviction on count 5 of the indictment.[4] Thus, the pronouncements of the Supreme Court in *Stromberg v. California,* as restated in *Zant v. Stephens,* 462 U.S. 862, 881, 103 S.Ct. 2733, 2745, 77 L.Ed.2d 235 (1983), are dispositive

of Clemmer's Rule 29(c) motion for acquittal.

The rule derived from *Stromberg* is a simple one reducible to the concise mandate that "a general verdict must be set aside if the jury was instructed that it could rely on any one of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on those insufficient grounds." *Zant,* 462 U.S. at 881, 103 S.Ct. at 2745. As evidenced by the Supreme Court's relatively recent affirmation of *Stromberg* in *Zant,* there is no suggestion in the case law that the rule derived from *Stromberg* has fallen into disfavor. *See also Bachellar v. Maryland,* 397 U.S. 564, 571, 90 S.Ct. 1312, 1316, 25 L.Ed.2d 570 (1970); *New York Times Co. v. Sullivan,* 376 U.S. 254, 284, 84 S.Ct. 710, 728, 11 L.Ed.2d 686 (1964); *Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957); *United States v. Kneen,* 879 F.2d 345, 347 (8th Cir.1989); *Ingber v. Enzor,* 841 F.2d 450, 456 (2nd Cir.1988); *United States v. Hook,* 781 F.2d 1166, 1172 n. 7 (6th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986); *Feela v. Israel,* 727 F.2d 151, 154 (7th Cir.1984); *United States v. Driscoll,* 449 F.2d 894, 898 (1st Cir.1971), *cert. denied,* 405 U.S. 920, 92 S.Ct. 948, 30 L.Ed.2d 790 (1972). Nor has there been any suggestion that *Stromberg* is limited in application to cases of *legal,* as opposed to factual, insufficiency. *See United States v. Kneen,* 879 F.2d at 347 (general verdict of conviction overturned for government's

---

**3.** The panel majority asserts that the instruction did not present the jury with the opportunity to convict Clemmer solely on the basis of the Wilton income. This interpretation rests, in part, on the observation that "Judge Rice [did not] tell the jury that [Clemmer] did not report the interest." It was, obviously, not error for the district court not to instruct the jury on the answer to this disputed issue of *fact.* Also, the majority notes in support of its assertion that the question of the Wilton income was not submitted to the jury that "Judge Rice did not tell the jury that if defendant received the interest, he is guilty of filing a false tax return." This suggested instruction, too, would have been error, because it is no crime to receive interest income.

**4.** The panel majority's tenuous effort to distinguish *Stromberg* from this case is further undermined by its excursions into factually and legally insupportable guesswork, as demonstrated by its presumption that the jury did *not* convict Clemmer on the basis of the Wilton auto income, alone, because the "proof was to the contrary." In another example of its willingness to inquire into the jury's subjective thought processes, the majority remarks that "it seems probable" that the jury was, in its note sent to the court during deliberations, referring to the Wilton income as only as "simply an example" of taxable income, rather than as an item of income that would subject Clemmer to conviction under count 5.

failure to establish sufficiently as a matter of fact that defendant knowingly violated Tax Code in one of three ways charged to the jury).

In light of the instructions in the instant case, the jury conceivably could have convicted Clemmer of count 5 of the indictment solely upon a finding that he did not report his 1983 interest income from Wilton Auto Sales. Because this was a general verdict, neither this court nor any member of this panel, either individually or collectively, can know whether the verdict may have rested exclusively on the inarguably insufficient issue of the Wilton income. Accordingly, because I am is constrained to abide the dictates of the Supreme Court, I respectfully dissent and would affirm the district court's granting of Clemmer's posttrial motion for acquittal.