85 F.3d 630
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sylvia Ann SMITH, Defendant-Appellant.
 No. 95-6099.
 United States Court of Appeals, Sixth Circuit.
 May 14, 1996.
 
 Before: ENGEL, SUHRHEINRICH and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Sylvia Ann Smith appeals from the judgment of conviction for conspiracy to possess with intent to distribute crack cocaine and possession of crack cocaine. For the reasons that follow, we AFFIRM.
 
 I.
 
 2
 Michael Pardue became a confidential informant after the Austin Peay University Police in Clarksville, Tennessee, found four to five ounces of crack cocaine in his possession. Pardue agreed to arrange for his supplier, codefendant Errol Eugene Washington, to bring a large quantity of crack cocaine to Clarksville in return for immunity from charges. Pardue had met with Washington in Clarksville in June 1993 to discuss drug negotiations. Defendant Smith was with Washington; she did not participate in the negotiations, however. Washington is a distant cousin of Smith.
 
 
 3
 In late June or early July, Pardue met Smith at a motel in Nashville, Tennessee, pursuant to Washington's arrangements. Smith delivered crack cocaine to Pardue, after receiving and counting out the money produced by Pardue. The drugs were in a zip-lock plastic bag, coated with a dark substance such that its contents could not be seen. Again on August 19, 1993, Smith, acting as Washington's courier, delivered approximately nine ounces of crack cocaine to Pardue. Once again, she counted out the proffered money prior to producing the package of crack cocaine, which was packaged in the same manner as the previous incident.
 
 
 4
 On August 28, 1993, after Pardue became a cooperating individual, Washington called Pardue to tell him that he Washington was waiting at the bus station for Smith, who would be arriving from Atlanta, Georgia, with some crack cocaine previously negotiated for by Pardue. Pardue, under surveillance, met Washington at a motel. Pardue paid for 650 grams of crack cocaine with marked money. Shortly thereafter, officers chased Washington, catching him outside a motel room registered to Smith. She was inside. A bus ticket was found in her purse under an assumed name.
 
 
 5
 Smith and Washington were indicted on July 13, 1994, each with conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846; and with distribution and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. After pleading not guilty, defendant filed a Rule 12.2 notice of intent to introduce testimony regarding her mental state. See Fed.R.Crim.P. 12.2(b). At trial she offered evidence that she is borderline mentally retarded with a full scale IQ of 72 (J.A. 203), and that she is described by people who know her as somewhat slow (J.A. 155, 178), anxious to please others at the expense of herself (J.A. 147, 159), and "not completely in touch with reality" (J.A. 143, 144, 150).
 
 
 6
 Defendant was convicted by jury on count one, and on count two, was found guilty of the lesser included offense of possession of crack cocaine. She was sentenced to thirty-seven months imprisonment on each count, to run concurrently, and five years supervised release.
 
 
 7
 On appeal Smith contends that there was insufficient evidence of her intent to commit the charged crimes.
 
 II.
 
 8
 We review challenges to the sufficiency of the evidence asking "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Circumstantial evidence alone is sufficient to sustain a conviction. United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989).
 
 
 9
 An essential element of conspiracy is knowing and voluntary participation in the conspiracy. United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). Smith points out that the government presented no direct evidence that she knew she was carrying cocaine for Washington; only that she counted out money before handing over the packages to Pardue. There was no evidence that drugs were ever discussed in Smith's presence, and no statements by Smith exhibiting her involvement. Pardue stated that the drugs were not visible to Smith. Given her diminished mental capacity, Smith claims that the most that can be inferred from the facts was that she unwittingly carried cocaine for Washington.
 
 
 10
 The consensus of all the witnesses--friends, relatives, and coworkers--was that Smith was slow. Yet Laura Lee Poston, Smith's supervisor at the Internal Revenue Service where Smith worked, indicated that she was "borderline minimally successful" at her job. (J.A. 178.) Although the testimony of Dr. Pamela Auble supports her defense of limited analytical abilities and lack of judgment (J.A. 205-07, 213-14), and the government's expert Dr. Richard Taran agreed with much of Dr. Auble's assessment, Taran also opined that Smith actually performed in the real world better than she tested (J.A. 251), that "[she] know[s] enough to come in out of the rain" (J.A. 246), and that she knew the difference between right and wrong (J.A. 247).
 
 
 11
 Given Dr. Taran's testimony, there was sufficient evidence upon which the jury could find that Smith had the requisite mental capacity to knowingly and voluntarily join the conspiracy to distribute crack cocaine. See United States v. Warshawsky, 20 F.3d 204, 210 (6th Cir.1994) ("it is the jury's function, not [the court's], to weigh the evidence and choose among competing views").
 
 
 12
 With the mental capacity to form the requisite intent, willing participation in the charged conspiracy is easily inferred from Smith's conduct. Pardue testified that he met with Smith twice in a motel room to exchange drugs, in June 1993 in Nashville and on August 19, 1993, in Clarksville. Each time Smith counted out the money, presumably because she knew the agreed upon purchase price, before handing over the cocaine. Each time she traveled by bus from Atlanta. This conduct is certainly not inconsistent with illicit activity.
 
 
 13
 Smith further argues that the jury's finding that she was not guilty of distributing crack cocaine necessarily precluded a guilty verdict of conspiring to distribute crack cocaine. Even assuming this is true, inconsistent verdicts are not fatal to a conviction. United States v. Clemmer, 918 F.2d 570, 573 (6th Cir.1990); United States v. Sandy, 605 F.2d 210, 216 (6th Cir.), cert. denied, 444 U.S. 984 (1979).
 
 
 14
 AFFIRMED.